**NOBLE, Plaintiff, v. NOBLE, Defendant.**

Common Pleas Court, Highland County.

No. 18486.

## OPINION

By HOTTLE, J.

Trial was had upon the within cause of action on April 25, 1959, with Plaintiff presenting her case, and Defendant failing to make any appearance, having been served by publication, which the Court finds proper to afford jurisdiction for said trial, and a divorce was granted to Plaintiff upon the evidence.

However, the question of the Court's jurisdiction and power to award custody of the parties' children was reserved for further consideration by the Court.

The evidence was that Plaintiff is, and has been for some ten or eleven years, a resident of the state of Ohio and for several years a resident of the county of Highland; that she and the children named in the petition and the Defendant herein have had their domicile in said county during those years, although Defendant, in his work, was located in other states from time to time. It appears that Defendant has recently failed to come home on weekends and that his interests apparently lie elsewhere than with his wife and family.

The question that this Court fails to find adjudicated in the cases of Ohio is whether or not this Court has the jurisdiction and power to determine the custody of the parties' children when the mother, Plain-

tiff, has residence and domicile with them in this county, but when the father and husband, Defendant, is residing outside the state of Ohio and service is effected by publication pursuant to §3105.06 R. C., and he makes no appearance in any way. It should be noted that the papers in the file do not reveal any copy of the divorce petition or a copy of the publication reaching him.

Upon consideration of the question, this Court decides upon the facts herein that it has the jurisdiction and power to make a determination of the custody of the children, but does not have the jurisdiction and power to make any award for their support. In view of the testimony, the custody is awarded to Plaintiff with reasonable visitation rights for the Defendant at the home of Plaintiff, subject to the Court's further order.

The Ohio case as nearly parallel to the facts of the instant case is **Black v. Black, 110 Oh St 392,** in the opinion of which the Court said at page 394,

"Surely, if there was jurisdiction in the common pleas court here to hear and determine the application for divorce or alimony, that jurisdiction would also extend to the determination of the custody of the minor child who had in fact been with her mother all the time referred to, and prior to that decree the juvenile court of Franklin County, Ohio, in a proceeding under the statute, had made the child a ward of the court and placed her in the custody of the mother."

However, the instant case does not involve an award of the Juvenile Court, and the Black case did not have the specific question before it because the Defendant had, by his pleadings and his appearance in open Court, waived any question of jurisdiction over his person. Therefore, the statement above quoted seems to be obiter dictum. It appears to the writer of this opinion that the question involved in the instant case was specifically reserved by the Supreme Court in **Swope v. Swope, 163 Oh St 59 at 61** (last paragraph).

**Sec. 3105.21 R. C.,** provides:

"Upon satisfactory proof of any of the charges in the petition for divorce or for alimony, the court of common pleas shall make such order for the disposition, care, and maintenance of the children of the marriage, as is just, and in accordance with §3109.04 R. C."

**Sec. 3105.04 R. C.,** provides:

"When a wife files a petition for divorce or for alimony, the residence of her husband does not preclude her from the provisions of §§3105.01 to 3105.21, inclusive, R. C."

The Code provisions, in the Court's opinion, necessarily require a determination of the Court's jurisdiction over the question stated above.

Turning to the highest courts of other states for decisions on the exact question, the writer of this opinion has found some determinations thereof.

Syllabus 3 of Hicks v. Hicks, 18 S. E. Reporter 2d 754 (Georgia), states in part:

"In an action for divorce instituted in the courts of this state by a

wife against her nonresident husband, the court has power to award to her the custody of the children, if they are within its territorial jurisdiction, and even though the only service on the husband is by publication." . . .

Kenner v. Kenner, a Tennessee decision, reported in 201 S. W. Reporter 782, involved a case in which the wife left her husband to live with her brother, a doctor in Alabama, who was treating the child of the parties. The primary purpose in the wife's leaving was because of the ill treatment of the husband. She secured a divorce in Alabama, later returning to Tennessee to visit, and during the visit, the former husband filed suit to set aside the Alabama divorce decree and to obtain the custody of or visitation privileges with the parties' child. The following quotation indicates the Tennessee Court's decision on the question.

"Should such foreign decree be accorded binding force when it purports to determine the right of custody of the children of the marriage, when such children were in the foreign state, in the custody of the plaintiff therein, where the suit was brought, and where the decree was pronounced or should the defendant in that suit, aside from grounds of fraud, be permitted to reopen the question, on such child or children being brought into the residence state of such defendant, for a temporary purpose, as for a visit?

"We are of the opinion that, under the circumstances stated in the question, the decree should be held binding on the parties thereto. Where the father loses custody of his infant children, and their disposition is brought before a competent court for determination of the question, the primary inquiry concerns the welfare of the children, not the technical legal right of the father to their possession, to use them at once, or at some future day, when grown older, for the benefit of their services and this is emphatically true when the person who invokes the aid of the court is the mother of the children, and a worthy woman. . . . The dominant thought is that children are not chattels, but intelligent and moral beings, and that as such their welfare and their happiness is a matter of first consideration."

Brandon v. Brandon, a Georgia decision reported in 115 S. E. Reporter 118, involved a mother residing in Akron, Ohio, who filed her suit against the husband residing in Georgia. The parties' child was with the mother, but soon after the divorce proceeding was filed and before service was made, the father of the child surreptitiously came to Ohio and took the child to Georgia. The Georgia Court refused in the mother's habeas corpus proceeding to give the mother the custody; but did state by way of obiter dictum,

"If this child had been residing with the mother in Ohio at the time of the rendition in that state of the decree of divorce in favor of the mother upon constructive service, such decree might be binding and conclusive upon the father in this habeas corpus proceeding brought by the wife in this state to secure the custody of the child from the father. It has been held that action for divorce is a proceeding in rem so far as it affects the status of the parties and the custody of their

minor children within the jurisdiction of the court, and that service of the summons by publication is good."

The first two cases above are parallel on the facts involved in the instant case, and the last case above, by assuming certain facts and by dictum, creates a factual situation parallel to the instant case.

A factual situation—different but close enough to the instant case to discuss—is a Missouri case of Beckmann v. Beckmann—the Appellate decision of which is found in 211 S. W. Reporter 2d. 536, and the Supreme Court decision of which is found in 218 S. W. Reporter 2d 566.

The husband suddenly took the children of the parties from Missouri and went to California. The wife filed her case in Missouri and obtained service by publication. After preliminary proceeding, the Court awarded the wife a divorce and custody of the children with maintenance and alimony. The Appellate Court held that the award of custody was proper, but that the judgment for maintenance and alimony was void, and stated in the course of the opinion,

". . . Jurisdiction to award custody is a function of the state wherein the children are domiciled, except where both parents are personally before the court seeking an adjudication, on the theory that their personal rights are involved. But the courts of this state have jurisdiction to deal with the status of children domiciled within the state by reason of the interest of the state as parens patriae. In such case, the res is within the state, and may be subjected to the jurisdiction of the court in the same manner as the status of marriage. Service by publication on defendant brought before the court the relation of the children to their parents. In our opinion, the court had jurisdiction over the res in this case and it was not error to make an award of the custody of the two children to plaintiff herein."

The Missouri Supreme Court stated that the Appellate opinion was well reasoned, and pointed out that the husband claimed he was temporarily in the state of California being detained there by ill health. He made this claim at the preliminary hearing and did not submit himself to the jurisdiction of the Court. The Court found therefore, that his domicile was still in Missouri, and although the children were in California, their domicile followed his, and the trial Court had jurisdiction over the custody matter. The Court said in the course of the opinion,

. . . "Thus he retained his domicile in Missouri. Such being the case the children were also domiciled here, and the status as to their custody was a thing or res within the jurisdiction of the court even though the children were physically without the state. Since such status was within the court's jurisdiction, the court was authorized to deal with it, and the judgment awarding custody was a proper exercise of judicial power and therefore valid. And inasmuch as the status was within the jurisdiction of the court the fact defendant was served by publication did not deprive the court of jurisdiction. To the contrary such service was a step necessary to a judgment affecting the status."

The Court also quoted the following sections of the Restatement:

"The custody of minor children is comprehended under the term

status because it involves 'a legal personal relationship, not temporary in its nature nor terminable at the mere will of the parties, with which third persons and the state are concerned.' Restatement Conflict of Laws, Section 119.

"Ordinarily the domicile or legal residence of a minor child is the same as that of the father. But where the father and mother separate and establish different domiciles the child usually takes the domicile of the parent with whom it lives in fact." Restatement Conflict of Laws, Section 30.

In a habeas corpus proceeding, the Supreme Court of Minnesota in the 1st syllabus said in part,

"Since a proceeding to determine custody of a minor child partakes of the nature of an action in rem, the res being the status of the minor, only the court of that state in which the minor is domiciled can fix or change that status." . . . State, ex rel. Larson v. Larson, 252 N. W. Reporter, 329.

In a habeas corpus proceeding, Hilton v. Crawley, 41 N. W. Reporter 2d 60 at 73, the Supreme Court of Iowa said in the course of the opinion,

"In Lake v. Lake, 63 Wyo. 375, 182 P. 2d 824, 838, the court quoted Nelson, Divorce and Annulment, 2d Ed., sections 1532-1533, thus: 'To enter a valid judgment or decree a court must not only have jurisdiction of the parties but it must also have jurisdiction of the subject matter. The subject matter involved in a proceeding to determine the question of custody of minor children of parties to a suit for divorce is the children themselves, and if the court does not have jurisdiction of the children it does not have jurisdiction of the subject matter to determine the right of custody.' The opinion cites numerous authorities. See also Gilman v. Morgan, 158 Fla. 605, 29 So. 2d 327, 373, Certiorari dismissed on motion of petitioners, 331 U. S. 796, 67 S. Ct. 1740, 91 L. Ed. 1822, in which it is said: 'The minors are the res and without their presence within the jurisdiction of the court its judgment cannot be enforced and is a nullity.' . . . it becomes clear that their domicile is not the essential factor which calls for the exercise of the sovereign protection, care, control, and custody of them, but all that is necessary is the presence of the infants in the State—that they are within its borders. When that is the fact, be the infant a destitute, unprotected, homeless waif, or the subject of litigation for his custody between his parents or others, and not without care, the State, in the first instance, through its agencies, takes direct and immediate protective action, and in the second, in any litigation involving the custody of the infant, be it divorce, habeas corpus, or other proceeding in equity, the State injects itself as a vitally interested third party."

The United States Supreme Court decision in May v. Anderson, 345 U. S. 528, 73 Sup. C. 840, involving a habeas corpus proceeding, and reversing the Ohio State Supreme Court, involved these pertinent facts: the parties were married, lived and had their domicile in Wisconsin; differences arose, the mother brought their children to Ohio for a trial separation, decided to remain apart; the husband filed suit in Wisconsin and secured service of process by delivering to her personally of the

copies of the summons and petition, which service was authorized by Wisconsin statute in a divorce action, but which was not authorized specifically therein for the custody of the children. Soon after the Wisconsin decree awarding him custody of the children, the father obtained the children, took them to Wisconsin, then later they came back to Ohio for a visit with the mother who refused to release them to the father, he thereupon filed a habeas corpus proceeding in the Ohio Court, relying on the Wisconsin decree awarding him custody subject to the mother's reasonable visitation rights. The Court held among other things,

. . . "that since the mother was not domiciled, resident, or present in state wherein decree was issued and jurisdiction was not obtained over her in personam, the court could not cut off her immediate right to the custody of her minor children."

Justice Frankfurter, concurring and explaining the majority opinion, said at page 844,

"What is decided—the only thing the Court decides—is that the Full Faith and Credit Clause does not require Ohio, in disposing of the custody of children in Ohio, to accept, in the circumstances before us, the disposition made by Wisconsin." . . .

Justice Jackson vigorously dissented and said in his opinion at page 847,

"The difference between a proceeding involving the status, custody and support of children and one involving adjudication of property rights is too apparent to require elaboration. In the former, courts are no longer concerned primarily with the proprietary claims of the contestants for the 'res' before the court, but with the welfare of the 'res' itself. Custody is viewed not with the idea of adjudicating rights in the children, as if they were chattels, but rather with the idea of making the best disposition possible for the welfare of the children. . . . Personal jurisdiction of all parties to be affected by a proceeding is highly desirable, to make certain that they have had valid notice and opportunity to be heard. But the assumption that it overrides all other considerations and in its absence a state is constitutionally impotent to resolve questions of custody flies in the face of our own cases. The wife's marital ties may be dissolved without personal jurisdiction over her by a state where the husband has a genuine domicile because the concern of that state with the welfare and marital status of its domiciliary is felt to be sufficiently urgent. Certainly the claim of the domiciled parent to relief for himself from the leave-taking parent does not exhaust the power of the state. The claim of children as well as the home-keeping parent to have their status determined with reasonable certainty, and to be free from an incessant tug of war between squabbling parents, is equally urgent." . . .

Justice Minton dissented on the basis that the majority opinion and Justice Jackson's dissent dealt with a jurisdictional question not raised on the record.

Although the decision seems to be contra to the decision herein, the May case did not involve the specific set of facts before this Court,

and as Justice Frankfurter pointed out, it seems that the decision was limited to the application of the Full Faith and Credit clause of the Constitution of the United States.

The Court points out that Defendant may later move to modify the Court's decree as to custody; although, it must be recognized that he is not on the equal footing that he would stand on an original hearing, and although this factor cannot be determinative of the issue of personal or constructive service.

For general references, the Court mentions Nelson "Divorce and Annulment," second edition, Vol. 2, Chap. 15, Section 15.33; Vol. 17A Am. Jur. Section 1813 under Divorce and Separation.

The question of support for said children seems to be answered adequately by the holding in Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, wherein the Court held it had jurisdiction on a money judgment only when personal service was obtained. (See also Syllabus 1, Hicks v. Hicks, supra.)