KURTZ, Appellee,

v.

KURTZ, Appellant.

[Cite as *Kurtz v. Kurtz* (1991), 71 Ohio App.3d 176.]

Court of Appeals of Ohio,
Erie County.

No. E–90–11.

Decided Feb. 22, 1991.

W. *Patrick Murray,* for appellee.

*John A. Pfefferle,* for appellant.

MELVIN L. RESNICK, Judge.

This is an appeal from a judgment of the Erie County Court of Common Pleas which denied appellant's motion to quash service and to vacate a divorce decree terminating the marriage of appellant, Howard E. Kurtz, and appellee, Geraldine B. Kurtz. Appellant timely filed a notice of appeal on this judgment. He asserts a single assignment of error:

"I. The Court of Common Pleas of Erie County did not have jurisdiction of the plaintiff's complaint for divorce filed on May 3, 1972, and the subsequent decree of divorce and the judgment reducing the arrearage of support against the defendant filed on October 25, 1972, and therefore the defendant's motion to quash service by publication and to vacate the complaint for divorce (May 3, 1972), and judgment for divorce (October 25, 1972), as a [sic] void ab initio should be granted as to all judgments 'in personum' [sic] against the defendant based upon the defective service by publication."

Although repetitious, a fairly detailed rendition of the history of this case is necessary to a resolution of appellant's assigned error.

On July 20, 1965, appellee filed a complaint asking for alimony only, that is, for separate maintenance. The complaint also requested temporary alimony and child support for the couple's three minor children. One of those children, Kevin, is mentally handicapped. Appellee also requested an injunction restraining appellant from encumbering or disposing of any of the marital assets.

Appellant was personally served with notice of this action and, on November 2, 1965, filed an answer and a counterclaim asking for a divorce on the grounds of gross neglect of duty and extreme cruelty.

On July 20, 1965, the court below granted appellee's request for an injunction and, on August 2, 1965, ordered that appellant pay to appellee $100 per payday in support for her and the children. Appellant was also ordered to pay all reasonable medical and dental expenses for his family.

On April 7, 1966, an affidavit for a citation in contempt was filed by the Erie County Bureau of Support in the trial court. It was asserted that appellant was in arrears in his support payments. The trial court issued a show cause order which was personally served upon appellant at 1808 Cleveland Road in Huron, Ohio. As the result of the show cause hearing, appellant filed a motion with the court asking that a consent judgment entry modifying the support award and ordering payment for the arrearage be journalized. The court filed the consent entry on September 21, 1966.

A second affidavit in contempt was filed on October 10, 1966, alleging that appellant was again in arrears in his support payments. A show cause order,

filed on that same date, was sent by certified mail to appellant at "Box # 341 or 1808 Cleveland Road" and was returned stamped as "unclaimed." The trial court, on November 4, 1966, placed this case on its "inactive list."

A third affidavit in contempt was filed on January 10, 1967. Notice of a show cause order was again sent by certified mail to appellant at "Ortner Flying Service." This service was returned and was stamped "Moved, left no address."

A bench warrant for appellant's arrest for contempt of court was filed on April 10, 1968. In August 1968, appellant was arrested, appeared before the court and posted bond. However, appellant's address, *i.e.*, place of residence, does not appear in any of the documents relating to this proceeding. After a hearing held on October 4, 1968, the trial court entered an order modifying the temporary child support order by awarding appellee $45.45 per week payable to the clerk of court each Friday and ordering appellant to be jailed for each weekend that he failed to pay the required support. The court also granted appellant's motion for an accounting to be made by appellee on a sharecrop farming operation carried out on the marital premises.

On June 22, 1970, appellee filed a motion for contempt. The affidavit in support of the motion contended that appellant had not paid child support since March 29, 1970. Personal service was requested through the Erie County Sheriff's Department. The service was not completed because "the subject moved from this area six weeks ago, address not known."

A similar motion was filed on March 16, 1971, and asked for a lump sum judgment in the amount of $4,618.25. Service was made upon appellant's attorney of record. Appellee was awarded a lump sum judgment of $4,835.25 on May 18, 1971.

On May 3, 1972, appellee filed a complaint for divorce. Accompanying this complaint was an affidavit asserting that appellee had made diligent efforts to determine her husband's present residence but had been unable to do so.

Service of appellee's divorce action was accomplished by publication in the Sandusky Register and read as follows:

"NOTICE OF PUBLICATION

"GERALDINE B. KURTZ vs. HOWARD E. KURTZ  Common Pleas Court of Erie county, Ohio Case No. 35477.

"Howard E. Kurtz whose place of residence is unknown will take notice that on the 3rd day of May, 1972, Geraldine B. Kurtz filed her Complaint against him in the Court of Common Pleas of Erie County, Ohio, praying for divorce, alimony and other relief on the grounds of gross neglect of duty. Said cause will be set for hearing on or after the 20th day of June, 1972."

On July 7, 1972, appellee filed a motion for an injunction restraining Alice B. Bittel, administrator of the estate of Elizabeth M. Kurtz, appellant's aunt, from dispersing any assets of the estate to appellant. Appellee filed a second motion asking that Bittel be joined as a party to the divorce action so that past arrearages and any future support and alimony awards could be satisfied from that estate. This motion was supported by an affidavit and Elizabeth Kurtz's will which devised a life estate in Kurtz's property to Bittel and a remainder, upon Bittel's death, to appellant. Bittel, both individually and as executor of Kurtz's estate, was made a party to the action, duly served and answered.

Appellant never answered the divorce decree or appeared. Appellee was granted a divorce on October 25, 1972. Child support, for Kevin only, in the amount of $50 per week plus poundage was ordered. Temporary alimony and child support arrearages were reduced to a lump sum judgment in the amount of $8,334.91. Appellee was awarded $30 per week in alimony for a period of one hundred twenty months (ten years), the marital residence, and certain personal property. The court expressly held that any arrearages in child support or alimony would be satisfied from appellant's remainder interest in Elizabeth Kurtz's estate. The court further ordered that Bittel could not transfer, assign, or devise any of that estate until such a time that the court determined the needs of Kevin Kurtz.

On March 26, 1979, appellee filed a motion for contempt and requested the payment in arrearages of $35,000 plus interest from appellant. Appellant was served by certified mail at 222 Munsee Place, Huron, Ohio. He filed a motion to dismiss. No further action was taken on the contempt motion.

On August 29, 1988, appellant filed a motion to quash service of the divorce proceeding instituted in May 1972, and to dismiss the complaint. On October 26, 1988, he filed a motion to vacate the decree of divorce for lack of jurisdiction due to defective service by publication. Appellee filed a memorandum in opposition.

A hearing on this matter was held before a referee on January 10, 1989. At that hearing, testimony from appellee disclosed that she was aware of appellant's residing on Cleveland Road at some point prior to the institution of her divorce action, but that she could not remember the address. She also testified that she knew he had moved from the Cleveland Road address before 1972 and that she had no idea where he was.

Appellant testified that he lived at *104* Cleveland Road for six or seven months after he left the marital home in 1965. He then resided at 222 Munsee Place in Huron, Ohio, until 1969. At that point appellant moved to Kissamee, Florida. He then moved back to the Huron, Ohio address in 1975. Appellant

stated that he was unaware of the divorce proceedings prior to the date the divorce decree was issued. Upon cross-examination, appellant admitted that he learned of the divorce shortly after it became final. He immediately, in early 1973, remarried. Appellant also admitted that he left the state without informing his attorney or his family and concealed himself in Florida and that, even though he was employed in Florida, he did not attempt to pay the court-ordered child support and alimony obligations. Appellant also disclosed that Bittel died in 1987 or 1988, and, as a result, he had inherited a "sizeable sum of money."

On August 31, 1989, the referee filed a report which recommended that appellant's motion to vacate the divorce decree be denied. Appellant filed objections. On March 7, 1990, the trial court affirmed and adopted the referee's report and recommendations. This appeal followed.

Appellant, in his solitary assignment of error, asserts that any portion of the divorce decree journalized on October 25, 1972, which required that the domestic relations court have *in personam* jurisdiction over him was void *ab initio*. Appellant contends that the trial court lacked jurisdiction over his person because service by publication made pursuant to Civ.R. 4.4(A) was defective. Essentially, appellant asks this court to find that the divorce decree and division of marital property, both categorized as *in rem* proceedings, be found valid while the court's order for child support and alimony be found void due to a failure to obtain personal jurisdiction. This was not the relief requested by appellant in the court below. Appellant's motion to quash service and to vacate judgment asked that the divorce decree, in its entirety, be declared void. However, in his memoranda of law in support of his motions, at the hearing on this matter, and in his objections to the referee's report and recommendation, it is clear that the issue of lack of *in personam* jurisdiction is appellant's major contention. In order to prevail on this theory and obtain his desired result, appellant seeks to concede that the divorce decree itself and any portions involving *in rem* judgments are valid and enforceable. Nevertheless, appellant's motion to vacate and quash service are a direct attack on the divorce decree which would render that judgment void *ab initio*, not merely voidable. Thus, if mandated publication procedures were not followed and no exception can be found, this court is required to find that the divorce decree itself is a nullity. See *Lincoln Tavern, Inc. v. Snader* (1956), 165 Ohio St. 61, 59 O.O. 74, 133 N.E.2d 606.

There are several issues which must be considered in determining this appeal. The first question is whether the service by publication of appellee's complaint in divorce was defective thereby rendering the judgment of divorce void *ab initio*. Second, we must decide whether, assuming the service was

statutorily deficient, there is some doctrine or legal principle applicable so that the decree itself can be held valid. Finally, we must determine whether the lower court had the jurisdiction to order child support and alimony in this divorce decree.

The purpose of service of process is to notify a defendant that a judicial proceeding has been commenced against him and to provide him with the opportunity to appear and defend himself. *Lincoln Tavern, Inc., supra; Zachary v. White* (1971), 26 Ohio App.2d 97, 99, 55 O.O.2d 217, 218, 269 N.E.2d 625, 626. Completion of original process is necessary to clothe the trial court with the jurisdiction to proceed. *O.B. Corp. v. Cordell* (1988), 47 Ohio App.3d 170, 171, 547 N.E.2d 1201, 1202. Thus, where service of process has not been completed, the court lacks jurisdiction to consider a complaint and, if any judgment is rendered on that complaint, it is void *ab initio. Rondy v. Rondy* (1983), 13 Ohio App.3d 19, 22, 13 OBR 20, 23–24, 468 N.E.2d 81, 84–85, quoting *Shaman v. Roberts* (1950), 87 Ohio App. 328, 330, 43 O.O. 50, 51, 94 N.E.2d 630, 631. A void judgment is a nullity and may be impeached at any time, either by collateral or direct attack. *Rondy, supra,* 13 Ohio App.3d at 21, 13 OBR at 22–23, 468 N.E.2d at 83–84. See, also, *Demianczuk v. Demianczuk* (1984), 20 Ohio App.3d 244, 245, 20 OBR 305, 306–307, 485 N.E.2d 785, 787–788.

This case is unusual in that original service of process had been properly completed and claims asserted by both parties were pending before the trial court at the time that appellee filed her complaint in divorce. Unlike those cases which generally find a judgment void due to defective original process or process insufficient to invoke the continuing jurisdiction of a domestic relations court,[1] the court below achieved both jurisdiction over the parties and the subject matter and had not made a final determination of the issues raised in the parties' claims. Therefore, we are not convinced that the court lacked the jurisdiction to consider and decide appellee's cause or that its judgment was void. See, *e.g., Bolinger v. Bolinger* (1990), 49 Ohio St.3d 120, 551 N.E.2d 157 (a domestic relations court achieves subject matter jurisdiction to award permanent alimony and divide marital property when *either* party files a complaint or counterclaim in divorce). Rather, we are of the opinion that the alleged defect in service by publication rendered the judgment

---

1. These cases include *O.B. Corp., supra* (no original valid service of process); *In re Miller* (1986), 33 Ohio App.3d 224, 515 N.E.2d 635 (defective service of process in custody modification); *Demianczuk, supra* (failure of original service of process); *In re Wilson* (1984), 21 Ohio App.3d 36, 21 OBR 38, 486 N.E.2d 152 (defective service in original action); *Rondy, supra* (defective service of process in modification of child support action); *Northland Dodge v. Damachi* (1978), 56 Ohio App.2d 262, 10 O.O.3d 273, 382 N.E.2d 779 (invalid original service of process by publication).

voidable rather than void. Thus, the judgment was subject only to a collateral attack pursuant to Civ.R. 60(B). *Rondy, supra,* 13 Ohio App.3d at 22, 13 OBR at 23–24, 468 N.E.2d at 84–85. In this instance, appellant's motion to vacate was clearly not made within a reasonable time after judgment. *GTE Automatic Electric, Inc. v. ARC Industries* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113.

However, a reading of the trial court's journal entry reveals that its judgment was wholly based upon the equitable principles of laches and/or estoppel. In doing so, the court ignored any allegations of deficiency of service by publication and found that the application of these equitable principles precluded appellant from requesting that the divorce decree be found void on any basis. Essentially, the court's judgment expands Ohio case law to include the application of equitable principles to causes of action in which the defendant alleges that he has had no notice of the proceedings prior to judgment. Cf., *e.g., Heflebower v. Heflebower* (1921), 102 Ohio St. 674, 133 N.E. 455; *Anderson v. Anderson* (1984), 13 Ohio App.3d 194, 198, 13 OBR 242, 246, 468 N.E.2d 784, 788–789; *Riggle v. Riggle* (1957), 76 Ohio Law Abs. 530, 148 N.E.2d 72; *Swisher v. Swisher* (1932), 42 Ohio App. 53, 54, 181 N.E. 917, 918; *Creek v. Creek* (1936), 22 Ohio Law Abs. 142. This permits the court to bar direct attacks upon a judgment which is purportedly void for lack of jurisdiction. Domestic relations courts of other states have not hesitated to, in the exercise of their equity powers, apply these equitable doctrines in order to prevent injustice and to uphold the public policy of the finality of divorce decrees. See, generally, Annotation, Vacating or Setting Aside Divorce Decree After Remarriage of a Party (1982), 17 A.L.R.4th 1153. The fact that the complaining party asserts failure of service of process prior to the entry of divorce has no effect upon the application of the doctrine. *E.g., Vickery v. Vickery* (1976), 237 Ga. 702, 229 S.E.2d 453 (estoppel); *Watson v. Watson* (1975), 235 Ga. 136, 218 S.E.2d 863 (laches); *Carlson v. Carlson* (1971), 148 Ind.App. 409, 266 N.E.2d 807 (estoppel); *Wendell v. Wendell* (1952), 111 Cal.App.2d 899, 245 P.2d 342 (estoppel); *Swift v. Swift* (1947), 239 Iowa 62, 29 N.W.2d 535 (laches); *Nicola v. Nicola* (1978), 61 A.D.2d 793, 401 N.Y.S.2d 858 (estoppel). The major considerations in those cases where courts have denied a request to vacate a divorce decree include (1) whether the complaining party had actual notice of the decree; (2) whether the party contesting the validity of the decree has benefited from the decree; (3) whether any fraud was committed by the party who sought the divorce, or, in converse, by the one requesting vacation; (4) the time elapsed from the date of the decree to the date that the contesting party asked for vacation of the decree. See Annotation, *supra,* at Sections 8(b), 9(b), 10(b), 13, 14(b), and 15 (and the cases cited therein). In this case, appellant testified that he learned

of the divorce shortly after it was entered and immediately remarried. Appellant also admitted that he deliberately concealed himself from his wife in order to avoid temporary alimony and child support payments. The time between the entry of divorce and appellant's motion to vacate was approximately sixteen years. Based on these facts, it becomes painfully clear that appellant was willing to accept the benefits of the divorce decree but is now unable or unwilling to accept the obligations imposed by that court-ordered decree. In consideration of these facts, we conclude that the trial court did not err in finding that appellant was precluded from attacking the validity of the divorce decree.

Appellant asserts that even if the decree is found to be valid that the court had no *in personam* jurisdiction and could not enter an order of child support or an order to pay alimony.

The Due Process Clause of the Fourteenth Amendment to the Constitution of the United States requires that a court must have *in personam* jurisdiction over a party prior to rendering a money judgment against him. *Pennoyer v. Neff* (1877), 95 U.S. 714, 24 L.Ed. 565. For this reason, it has been held that awards of child support and alimony, being essentially money judgments, could not be made absent *in personam* jurisdiction over the obligor. *Sutovich v. Sutovich* (1964), 120 Ohio App. 473, 29 O.O.2d 371, 200 N.E.2d 716; *Noble v. Noble* (1959), 80 Ohio Law Abs. 581, 160 N.E.2d 426. Nevertheless, child support and alimony can be awarded as part of a valid divorce decree where the court obtains jurisdiction over the real or personal property of the obligor and, in essence, transforms the nature of the award to that of *in rem* or quasi *in rem*. *Reed v. Reed* (1929), 121 Ohio St. 188, 167 N.E. 684; *Whitelaw v. Whitelaw* (1952), 65 Ohio Law Abs. 11, 14, 113 N.E.2d 105, 106–107; *Parker v. Parker* (1938), 28 Ohio Law Abs. 49, 56 N.E.2d 527; *Benner v. Benner* (1900), 63 Ohio St. 220, 58 N.E. 569.

In the instant case, appellant made an appearance in the proceedings and was ordered to pay both temporary child support and alimony. Appellant does not dispute that the court had *in personam* jurisdiction to make such orders, or to enforce them. Appellee's complaint for alimony only requested both child support and alimony. Thus, appellant was fully cognizant of the fact that he was subject to those claims. Appellee's complaint in divorce did not change the nature of these claims for relief, that is, child support and alimony. See *Francher v. Francher* (1982), 8 Ohio App.3d 79, 83–84, 8 OBR 111, 115–117, 455 N.E.2d 1344, 1348–1349. Thus, any due process requirements were met by the initial service of process and service by publication (defective or otherwise) of the complaint in divorce did not affect the trial court's previously acquired *in personam* jurisdiction over these claims.

Moreover, appellant was aware of the child support and alimony orders and even as late as 1979 failed to attack these judgments for a lack of personal jurisdiction. In addition, the court, during the course of the proceedings below, achieved control over the property of appellant and specifically subjected that property to alimony and child support payments. Therefore, pursuant to *Reed, supra,* and its progeny, the awards of child support and alimony were in the nature of *in rem* or quasi *in rem* judgments rather than *in personam* judgments. For all of these reasons, appellant's single assignment of error is found not well taken.

*Judgment affirmed.*

GLASSER and ABOOD, JJ., concur.