DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal of the May 3, 2005 judgment of the Lucas County Court of Common Pleas which denied appellants Bay Area Seal Coating Striping, Ltd., Patrick Burns, and Sandra Burns's motion to vacate default judgment or motion for relief from default judgment. For the reasons that follow, we affirm the trial court's judgment.
 {¶ 2} On September 5, 2003, appellee, Seal Master Industries, Inc., commenced an action against appellants, Bay Area Seal Coating Striping ("BASCS") and Patrick and Sandra Burns for monies due on an account following the delivery of goods purchased by BASCS and personally guaranteed by Patrick and Sandra Burns, owners of BASCS.
 {¶ 3} It is undisputed that appellee first attempted to serve each party by certified mail at the business address; on September 30 and October 3, 2005, the certified mail was returned to the court marked "unclaimed." On October 14, 2003, appellee requested that appellants be served by ordinary mail; the mail was not retuned to the court.
 {¶ 4} On November 21, 2003, appellee filed a Civ.R. 55 motion for default judgment; on December 17, 2003, the motion was granted and appellee was awarded $28,435.86 plus interest. Thereafter, appellants were issued a garnishment notice by certified mail; the notice was returned unclaimed. A debtor's examination was scheduled for July 14, 2004; personal service at the business address failed and the sheriff's office indicated that the building was closed.
 {¶ 5} On January 10, 2005, Thorworks Industries, Inc., fka Seal Master Industries, Inc., filed a petition to foreclose upon its certificate of judgment and that all liens on appellants Patrick and Sandra Burns's property at 506 S. Lallendorf, Oregon, Ohio (appellants' restaurant/bar known as "Game Time") be marshaled to pay the December 17, 2003 judgment. Appellants were notified by their bank of the foreclosure action and by certified mail receipt of the petition.
 {¶ 6} On March 9, 2005, appellants filed a motion to vacate the December 17, 2003 judgment. In their motion, appellants claimed that they never received notice of the action and that because the service attempts were insufficient, the default judgment was void. Alternatively, appellants argued that under Civ.R. 60(B)(5), the judgment was voidable "due to lack of notice because of medical hardship." Appellants supported the motion with their affidavits.
 {¶ 7} Following a hearing, the trial court denied the motion. This appeal followed.
 {¶ 8} Appellants raise the following three assignments of error:
 {¶ 9} "Assignment of Error 1
 {¶ 10} "The trial court erred when it overruled appellants' motion to vacate the default judgment because the trial court lacked jurisdiction over the appellants when it rendered the judgment.
 {¶ 11} "Assignment of Error 2
 {¶ 12} "The trial court erred when it overruled appellants' motion to vacate the default judgment pursuant to Civ.R. 60(B) because appellants timely filed for relief, were entitled to relief under Civ.R. 60(B)(5), and presented meritorious defenses.
 {¶ 13} "Assignment of Error 3
 {¶ 14} "The trial court committed reversible error when it refused to limit Patrick and Sandra Burns' liability as guarantors to the $10,000 limit set in the credit agreement."
 {¶ 15} In their first assignment of error, appellants contend that because service of the complaint at their business address was not "reasonably calculated" to reach them, the default judgment was void and the trial court erred by denying the motion to vacate.
 {¶ 16} Civ.R. 4.6(D) provides that if certified mail is returned with an endorsement showing that the envelope was "unclaimed," the serving party can request that the complaint be served by ordinary mail service. Under that scenario, service is deemed complete "when the fact of mailing is entered of record, provided that the ordinary mail envelope is not returned by the postal authorities with an endorsement showing failure of delivery." Civ.R. 4.6(D). Where service of process is not properly made pursuant to Civ.R. 4 et seq., the court lacks jurisdiction to consider the complaint and any judgment on that complaint is void ab initio. (Citations omitted.) Kurtz v.Kurtz (1991), 71 Ohio App.3d 176, 182.
 {¶ 17} Service of process must be made in a manner reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond. Regional AirportAuthority v. Swinehart (1980), 62 Ohio St.2d 403, 406, quotingMullane v. Central Hanover Bank Trust Co. (1950),339 U.S. 306, 314. In order for service of process to a business address to be "reasonably calculated" to apprise an individual of an action: "the party being served must have such a habitual, continuous or highly continual and repeated physical presence at the business address that the party ordering the service of process would have reasonable grounds to calculate that the service would promptly reach the party being served." Bell v.Midwestern Educational Serv., Inc. (1993), 89 Ohio App.3d 193,202.
 {¶ 18} The plaintiff in a case bears the burden of achieving proper service on a defendant. Cincinnati Ins. Co. v. Emge
(1997), 124 Ohio App.3d 61, 63. In those instances where the plaintiff follows the Ohio Civil Rules governing service of process, courts presume that service is proper unless the defendant rebuts this presumption with sufficient evidence of nonservice. A trial court's ruling on the sufficiency of service of process is within its sound discretion. Bell, supra, at 203.
 {¶ 19} At the hearing in the present case, appellants presented the following evidence of nonservice of the September 2003 summons and complaint. Patrick Burns testified that due to a neck injury in January 2002, and resultant neck surgeries in August and October 2002, BASCS became nonoperational in the fall of 2002. Burns testified that he conducted daily/regular business activities at the warehouse location until his August neck surgery. Following the surgeries, Burns's visits to the warehouse dwindled from a few times per week to once or twice a month.
 {¶ 20} Burns testified that they received a lot of junk mail at the warehouse address. Burns stated that at one point the mail carrier, who is the same one for the Burns's bar/restaurant business less than a mile down the road, stopped in and informed him that the warehouse mailbox was full and that if it was not emptied, mail service would be discontinued. Burns also indicated that at one point a representative of appellee stopped in to see him at the bar/restaurant address.
 {¶ 21} Regarding the utilities at the warehouse, Burns testified that they did not fill the propane tank for the 2002-2003 winter season. Toledo Edison threatened and eventually did disconnect service because appellants failed to pay the electric bill that was sent to the warehouse. Similarly, Burns learned that the city of Oregon water department was threatening to disconnect water service after being telephoned at their Oregon home.
 {¶ 22} Finally, Burns indicated that he was the statutory agent for BASCS and that he registered under his home address. Burns stated that he never received a copy of the summons and the complaint by ordinary mail. Burns's wife and business partner, Sandra Burns, also testified that she never received a copy of the summons or complaint.
 {¶ 23} During cross-examination, Burns acknowledged that he knew that all the warehouse utility bills were being sent to the warehouse. Burns stated that when customers paid for the product sold by BASCS, the checks were sent to the warehouse address. Additionally, on defendants' Exhibit C, the Seal Master credit application completed by BASCS, Burns listed the warehouse address.
 {¶ 24} At the conclusion of the testimony, the trial court denied appellants' motion. The court noted that mail was being delivered to the warehouse address and that appellants had regular contact with the postal carrier who informed them when the mailbox was full.
 {¶ 25} Upon review of the applicable law and the facts of this case, we must conclude that the trial court did not abuse its discretion when it denied appellants' motion to vacate the default judgment. The testimony established that appellants received telephone, water, and electric bills at the warehouse address; appellants also received checks from customers there. Additionally, appellants had a business approximately one mile away from the warehouse and the postal carrier would inform them when their warehouse mailbox was full. Finally, we note that the fact that appellants failed to pay their utility bills to the extent that the services were disconnected does not weigh in their favor. Appellants knew that the bills were being sent to the warehouse address and chose to ignore them; this could logically lead to the conclusion that, likewise, they chose to ignore the action pending against them. Because service was reasonably calculated to reach appellants, appellants' first assignment of error is not well-taken.
 {¶ 26} In appellants' second assignment of error, they argue that the trial court erred by denying their Civ.R. 60(B) motion for relief from judgment because they established a meritorious defense. Civ.R. 60(B) provides a mechanism for obtaining relief from judgment under any of the following five circumstances:
 {¶ 27} "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment."
 {¶ 28} It is well-settled that in order to obtain relief from judgment pursuant to Civ.R. 60(B) a movant must demonstrate: the applicability of one of the above-quoted grounds for relief; that if granted relief, the party has a meritorious defense or claim to present; and that, as to claims under Civ.R. 60(B)(5), the motion was made within a reasonable time. GTE v. AutomaticElec., Inc. v. ARC Indus., Inc. (1976), 47 Ohio St.2d 146, paragraph two of the syllabus.
 {¶ 29} A trial court's ruling on a Civ.R. 60(B) motion for relief from judgment is left to its sound discretion and will not be reversed on appeal absent a showing of an abuse of that discretion. Griffey v. Rajan (1987), 33 Ohio St.3d 75, 77. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 30} Appellants presented four potential "meritorious defenses" in their motion for relief from judgment. The defenses included: (1) lack of personal jurisdiction; (2) that the personal guarantee signed by the Burns's in 2001 had no effect on the extensions of credit in 2002; (3) the possible inaccuracy of the account; and (4) that the Burns's were not liable for credit extensions beyond the $10,000 requested on the credit application.
 {¶ 31} Based upon our disposition of appellants' first assignment of error, we find that appellants' first claimed meritorious defense regarding personal jurisdiction is not persuasive. We note, however, that an additional component of appellants' argument was that due to Patrick Burns's injury, the default judgment was voidable under Civ.R. 60(B)(5). In this case, we find that Burns's claimed "medical hardship" is not a meritorious defense. Appellant continued to operate the business until at least August 2002, and, following his mid-August 2002 surgery, checked the mail bi-weekly eventually dwindling down to once or twice a month. Thereafter, appellant was present at his bar/restaurant approximately one mile from the warehouse and was notified by the postal carrier when the warehouse mailbox was full.
 {¶ 32} Appellants' second claimed meritorious defense was that the 2001 personal guaranty signed by Patrick and Sandra Burns had no effect on the 2002 credit extensions. Reviewing the guaranty, we find no evidence of this assertion. There is no time limitation on the guaranty and it specifically refers to "indebtedness, as may be incurred from time to time." Accordingly, because the guaranty was continuing in nature, it would encompass extensions of credit in 2002.
 {¶ 33} In their third claimed meritorious defense, appellants argued, without any elaboration, that the account may not be accurate. At the hearing, Burns admitted that he has never attempted to determine whether the amount was correct or incorrect; he further acknowledged that they owe money to appellee. Thus, this defense lacks merit.
 {¶ 34} Appellants' fourth defense is that the Burns's were not liable for credit extensions in excess of $10,000. Based upon our discussion of this argument, infra, we find that this defense lacks merit. Appellants' second assignment is not well-taken.
 {¶ 35} In appellants' third assignment of error, they contend that the Burns's personal liability should be limited to $10,000 based upon the credit limit they indicated on the personal guaranty signed by the parties. Conversely, appellee asserts that if appellants were liable for only $10,000 of the total amount owed, they would be unjustly enriched.
 {¶ 36} The parties do not dispute that on the credit application appellants, Patrick and Sandra Burns, requested a $10,000 credit limit; an invoice admitted into evidence also demonstrates that BASCS had a $10,000 credit limit with appellee.
 {¶ 37} The parties both rely on City Wide Supply, Inc. v.Professional Air, Inc. (July 11, 2000), 10th Dist. App. No. 99AP-1152, to support their respective arguments. In City Wide,
a default judgment was granted on an unpaid account. The question before the court was whether the individual appellant who, at the time he signed a personal guarantee on the line of credit of $4,000, was the president and majority shareholder of the company, was personally liable for the $25,000 debt. Id.
 {¶ 38} The court concluded that because at the time the account was terminated appellant was no longer president and only a one percent shareholder, appellant would only be liable for the initial $4,000 limit. The court specifically rejected the "credit card theory" espoused by the trial court noting that the credit belonged to the corporation, not to the appellant. The court then proceeded to address whether the trial court properly held that appellant should be responsible for the full unpaid amount under an unjust enrichment theory. The court concluded:
 {¶ 39} "Appellant is not liable under the theory of unjust enrichment. In 1998, at the time the corporation was bankrupt and the additional obligations were incurred, [appellant] was a one percent shareholder. He had no authority relating to ordering supplies or making payments for those supplies. When the corporation was liquidated, [appellant] received nothing from the liquidation." Id.
 {¶ 40} Appellants argue that the City Wide court's decision to limit the appellant's liability to $4,000 should be applied in this case. Conversely, appellee distinguishes City Wide's
reversal of the trial court's finding of unjust enrichment arguing that, unlike the City Wide appellant, appellants have directly benefited from its extension of credit and, thus, should not be relieved from full liability. In their reply memorandum, appellants state that appellee waived the unjust enrichment argument as the issue was never raised in the trial court.
 {¶ 41} While we agree that appellee did not specifically raise the subject of unjust enrichment in its opposition to appellants' motion to vacate judgment,[1] we choose to consider the applicability of this equitable doctrine on appeal.
 {¶ 42} The Supreme Court of Ohio has held that "unjust enrichment of a person occurs when he has and retains money or benefits which in justice and equity belong to another." Hummelv. Hummel (1938), 133 Ohio St. 520, 528. To establish unjust enrichment, a plaintiff must show the following: (1) a benefit conferred upon defendant by plaintiff, (2) knowledge by defendant of the benefit, and (3) the acceptance or retention by defendant of the benefit under circumstances that make it inequitable for defendant to retain the benefit without payment of its value.Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183.
 {¶ 43} Here, unlike the facts in City Wide, supra, it is undisputed that appellants, Patrick and Sandra Burns, were the sole owners of BASCS. At the hearing in this matter, during cross-examination, Patrick Burns admitted that he purchased the product from appellee in the summer and fall of 2002, and that he sold the product to various individuals. Based on the foregoing, we find that appellants were unjustly enriched by the goods acquired from appellee, and that limiting their liability to $10,000 would be inequitable. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 44} On consideration whereof, we find that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J. Pietrykowski, J. Skow, J. concur.
[1] We further note that the waiver doctrine is discretionary and generally applies to a party who receives an adverse judgment in the lower court and, on appeal, seeks reversal of that judgment. See, generally, 4 Ohio Jurisprudence 3d (1999) 242-247, Sections 125-127.