RONDY, N.K.A. TUCKER, APPELLANT, *v.* RONDY, APPELLEE.

(No. 10998—Decided September 21, 1983.)

Mr. *Warren W. Gibson,* for appellant.
Mr. *William E. Howard,* for appellee.

QUILLIN, P.J. Sandra Tucker, plaintiff-appellant, appeals from an order overruling her motion to find the defendant-appellee, her ex-husband Thomas Rondy, in contempt for failure to pay child support. The trial court found that due to its two previous orders modifying Rondy's obligation of support, the defendant was not in arrears and had no current duty of child support. We reverse.

Facts

Although the facts are not in dispute, this case has a rather complex factual and procedural history which, we believe, necessitates a somewhat lengthy recitation of the circumstances giving rise to this appeal.

Thomas Rondy and Sandra Tucker were divorced in the Summit County Court of Common Pleas on January 3, 1978. The divorce decree provided that Rondy was obligated to pay $120 per child per month as child support. In 1980, Tucker left Ohio and established residence in Collier County, Florida. By journal entry dated June 25, 1980, the trial court modified Rondy's child support obligation to $20 per child per week while he was unemployed, and to increase to $24 per week when he found employment.

On March 6, 1981, a petition for support payments was filed in the Summit County Court of Common Pleas by the state of Florida, Collier County, on behalf of Tucker pursuant to the provisions of the Ohio Uniform Reciprocal Enforcement of Support Act ("URESA"). R.C. Chapter 3115. The petition requested that Rondy be found to owe a duty of support and be ordered to pay the support to the state of Florida, Collier County.

On April 15, 1981, Rondy moved to consolidate the URESA action with the prior divorce action. He also moved to modify his child support obligation. A hearing was held on Rondy's motion before a referee. The state of Florida, Collier County was represented at the hearing by the Summit County Bureau of Support. Neither Tucker nor her Ohio attorney were served with Rondy's motion or otherwise notified of said motion. By order dated June 16, 1981, the trial court approved and adopted the referee's recommendation to consolidate the URESA action and the prior divorce action and to modify Rondy's child support

obligation to $10 per child per week effective May 11, 1981. Neither Tucker nor her attorney received notification or was actually made aware of the scheduled hearing, the referee's recommendation, or the court's order.

On August 30, 1982, a hearing was held before the referee on the motion of the state of Florida, Collier County for a judgment for child support arrearages due and owing as of April 30, 1982. By order dated September 27, 1982, the trial court adopted the referee's recommendation that Rondy pay $1,360 in arrearages and that his child support obligation be suspended during Rondy's unemployment. Neither Tucker nor her attorney was notified or was otherwise made aware of the hearing or the referee's recommendation.

On September 23, 1982, Tucker filed a motion in the divorce action to find Rondy in contempt for his failure to make child support payments in the amount of $20 per child per week in accordance with the June 25, 1980 order of the court. She contended that the order of June 25, 1980 was the last valid order of the court concerning Rondy's child support obligation, and that he was consequently in arrears in the amount of $4,000. A hearing on her motion was held before the referee on October 15, 1982. Both Tucker and Rondy were present and represented by counsel. The referee found that Rondy was not in contempt because, due to the orders of June 16, 1981 and September 27, 1982, there were no arrearages due and owing, and no present duty of support due to Rondy's continued unemployment. The referee also found that Civ. R. 60(B) provided the only means by which Tucker could challenge the orders of June 16, 1981 and September 27, 1982. The trial court approved and adopted the findings and recommendations of the referee on December 17, 1982.

Tucker now appeals, setting forth the following assignment of error:

"The trial court erred when ruling that no child support arrearages were due the appellant pursuant to the local divorce decree."

### Discussion and Law

Tucker contends that through the improper consolidation of the URESA action and the divorce action, the orders of the court dated June 16, 1981 and September 27, 1982, initially modifying Rondy's support obligation to $10 per child per week, and then suspending Rondy's support obligation altogether during the period of his unemployment, were rendered without notice to her and are, therefore, void *ab initio*. It is Tucker's position that the lower court erroneously relied upon those orders in determining that no child support arrearages were owed by Rondy. Rondy claims that the instant appeal constitutes an impermissible collateral attack on the two previous judgments of the trial court, and that Tucker's only possible relief is by way of Civ. R. 60(B).

We note at the outset that consolidation of the two actions is not improper, *per se*. Consolidation may be proper so long as the separate identities of the parties are maintained. *San Diego* v. *Elavsky* (May 24, 1978), Summit App. No. 8719, unreported. As this court stated at 4-5 in that case:

"* * * We believe, however, that the trial court erred as a matter of law in holding that, after consolidation, the petitioner in the URESA case was 'in essence' the defendant in the local divorce case. Such a finding overlooks the separate identities of the parties and improperly merges two sets of different rights, interests and duties. * * *"

This conclusion was affirmed by the Supreme Court, which held that:

"* * * Where a state or political subdivision is the petitioner in the URESA action, the court in the local divorce case should not be able to modify the URESA order, even if it so specifically provides, unless the URESA petitioner has had

prior notice of the local proceeding and an opportunity to protect its interests therein. While the state or political subdivision will normally have the same rights as the individual obligee in such a case, it, rather than the parent or child, may be the party most desirous of enforcing those rights. Thus, the Court of Common Pleas also erred when it held that Esther Elavsky was in essence the petitioner in the URESA case." * * * *San Diego* v. *Elavsky* (1979), 58 Ohio St. 2d 81, at 87 [12 O.O.3d 88].

After consolidating the URESA action and the prior local divorce action in the instant case, the lower court proceeded to modify Rondy's child support obligation purportedly pursuant to its continuing jurisdiction under Civ. R. 75(I). Throughout these proceedings, however, the only two parties before the court were Rondy, as the respondent in the URESA action and defendant in the prior divorce action, and the state of Florida, Collier County, as the URESA petitioner. The plaintiff in the divorce action, Tucker, was not served with notice of Rondy's motions to modify his support obligation; nor was she notified of scheduled hearings on said motions; nor was she notified of the court's actions with respect to Rondy's motions. Thus, the proceedings which gave rise to the orders of June 16, 1981 and September 27, 1982 were totally devoid of any form of notice to Tucker and provided no opportunity for her to be heard and defend her interests. Service on the state of Florida, Collier County does not satisfy the service requirement on Tucker.

The jurisdiction in the URESA action did not permit the court to modify the prior divorce action. *San Diego* v. *Elavsky, supra,* (58 Ohio St. 2d 81 [12 O.O.3d 88]). Rondy's child support obligation could not be modified in the URESA action. Such a modification could only be effected in the divorce action pursuant to the court's continuing jurisdiction.

Civ. R. 75(I) states that:

"The continuing jurisdiction of the court shall be invoked by motion filed in the original action, notice of which shall be served in the manner provided for the service of process under Rule 4 through Rule 4.6. * * *"

It is uncontroverted that no notice was served on Tucker as required by Civ. R. 75(I). Thus, the issue is whether this lack of notice rendered the court's orders of June 16, 1981 and September 27, 1982 absolutely void or merely voidable. If voidable, these orders may only be attacked through Civ. R. 60(B) or by direct appeal, subject to the respective time limitations established therein. See *Antonopoulos* v. *Eisner* (1972), 30 Ohio App. 2d 187 [59 O.O.2d 309], paragraph one of the syllabus; and Staff Notes to Civ. R. 60(B).

If, however, the previous court orders are void *ab initio,* they may be attacked and impeached at any time, either by a direct or collateral proceeding. Civ. R. 60(B) does not provide the exclusive means for an attack on a judgment which is void. See *Lincoln Tavern, Inc.* v. *Snader* (1956), 165 Ohio St. 61 [59 O.O. 74], and Staff Notes to Civ. R. 60. Even Fed. R. Civ. P. 60(b), which, unlike the Ohio rule, expressly provides for the vacation of a void judgment, does not provide the exclusive method to attack such a judgment. See 7 Moore, Federal Practice (2 Ed. 1983), Paragraph 60.25 *et seq.;* and 11 Wright & Miller, Federal Practice and Procedure (1973), Section 2862, and cases cited therein. In order to determine the propriety of Tucker's challenge as to the validity of the orders dated June 16, 1981 and September 27, 1982, we must first determine whether these orders were voidable or void.

In *Romito* v. *Maxwell* (1967), 10 Ohio St. 2d 266, at 267 [39 O.O. 2d 414], the Supreme Court stated:

"The effect of determining that a judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity

(*Tari* v. *State,* 117 Ohio St. 481, 498; 31 Ohio Jurisprudence 2d 706, Judgments, Section 250) and the parties are in the same position as if there had been no judgment. *Hill* v. *Hill,* 299 Ky. 351, 185 S. W. 2d 245, and 30A American Jurisprudence 198, Judgments, Section 45."

See, also, 32 Ohio Jurisprudence 2d (1975) 238, Judgments, Section 33; and 92 Corpus Juris Secundum (1955) 1021, Void and Voidable.

The court below found that Tucker's exclusive remedy was through Civ. R. 60(B), implying that its previous orders were not void *ab initio,* but merely voidable. We disagree, and find that the journal entries dated June 16, 1981 and September 27, 1982 were void *ab initio.* The circumstances under which judgments are declared to be void are rare. A judgment is void only where the court lacks jurisdiction of the subject matter or of the parties or where the court acts in a manner contrary to due process. *In re Four Seasons Securities Laws Litigation* (C.A. 10, 1974), 502 F. 2d 834, at 842, certiorari denied *sub nom. Ohio* v. *Arthur Andersen & Co.* (1974), 419 U.S. 1034. In *Shaman* v. *Roberts* (1950), 87 Ohio App. 328, at 330 [43 O.O. 50], the court stated that:

"* * * Where there is no service of process the court is without jurisdiction to render judgment. Any judgment which is rendered, where no process has been served, is void *ab initio.* * * *"

Likewise in *Zachary* v. *White* (1971), 26 Ohio App. 2d 97, at 99 [55 O.O.2d 217], the court stated:

"The basic reason for the issuance and service of original process in a legal proceeding is to notify the party defendant of such proceeding and afford him the opportunity to appear and defend. Such service and attendant notification gives the court the necessary jurisdiction to proceed. *Lincoln Tavern, Inc.* v. *Snader* (1956), 165 Ohio St. 61 [59 O.O. 74]; *Krabill* v. *Gibbs* (1968), 14 Ohio St. 2d 1 [43 O.O.2d 1]."

We conclude that the continuing jurisdiction of the court cannot be properly invoked by motion pursuant to Civ. R. 75(I) in the absence of service of notice on the opposing party. *Yonally* v. *Yonally* (1974), 45 Ohio App. 2d 122 [24 O.O.2d 434]; and 18 Ohio Jurisprudence 2d (1972) 611, Divorce and Separation, Section 283. Lacking such jurisdiction, the court is without power to issue a valid, binding judgment. 32 Ohio Jurisprudence 2d 247, Judgments, Sections 44-49; *Ries Flooring Co.* v. *Dileno Constr. Co.* (1977), 53 Ohio App. 2d 255 [7 O.O.3d 320]; and *Grant* v. *Ivy* (1980), 69 Ohio App. 2d 40 [23 O.O.3d 124].

Accordingly, the orders rendered by the trial court on June 16, 1981 and September 27, 1982 were void *ab initio* as to Tucker. The court erred, therefore, by giving effect to these orders in the proceedings below. As these orders were void *ab initio,* they are subject to collateral attack. Tucker is not restricted to an attack based on Civ. R. 60(B).

### Conclusion

For the foregoing reasons, the order rendered by the trial court on December 17, 1982 is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed and cause remanded.*

BAIRD and GEORGE, JJ., concur.