OPINION
 "THE DECISION TO GRANT PERMANENT CUSTODY TO LCCS WAS NOT SUPPORTED BY THE EVIDENCE."
 "LCCS FAILED TO PROVIDE SUFFICIENT SUPPORT TO APPELLANT UNDER THE CASE PLAN."
 "NATURAL FATHER WAS NOT PROPERLY SERVED WITH NOTICE OF THE ACTION IN PERMANENT CUSTODY, THEREBY RENDERING THE COURT'S DECISION NULL AND VOID."
On August 19, 1996, Ciara, Michael, Emma and Deanna were adjudicated dependent and neglected. Temporary custody of these children was awarded to appellee.
On January 17, 1997, appellee filed a motion for permanent custody of the four minor children asserting that they could not be placed with either parent within a reasonable time or should not be placed with either parent. Appellee requested that appellant and Michael B., the putative father of the chil dren, be served with a summons and a copy of the motion for permanent custody.
The record reveals that personal service was attempted on Michael B. on eight occasions. His mother, Mabel, acknowledged the fact that Michael B. resided with her. However, she refused service of the summons. A handwritten notation on the summons indicates that Michael B. was then served notice by means of certified mail. Nonetheless, the docket sheet contains no mention of such service and no return receipt is included in the record of this case.
On September 8, 1997, the court held a hearing on the motion for permanent custody. Appellant and her appointed attorney were present for the hearing. Michael B. did not appear and was not represented by counsel. When the court asked whether the father of the children was of any "concern" and whether he was served by publication, appellee replied, "He is not here, Your Honor." The court then proceeded with a hearing on all matters before it.
In its final judgment, the trial court found that the children could not be placed with either parent within a reason able time or should not be placed with either parent. With regard to Michael B., the court specifically determined that:
 "[Michael B.] has demonstrated a lack of commitment towards the children by failing to regularly visit, support or communicate with his children when able to do so or by other actions showing an unwillingness to provide and [sic] adequate permanent home for the children."
The court also found that notwithstanding reasonable case planning and diligent efforts to assist the parents to remedy the problems that caused the removal of the children from the home, the parents were unable to remedy those conditions. The court further held that it would be in the best interest of the chil dren to be in the permanent custody of appellee. The juvenile court therefore terminated the parental rights of appellant and Michael B. and granted appellee's motion.
Because appellant's third assignment of error alleges that the juvenile court lacked the jurisdiction to award perma nent custody of her minor children to appellee, we shall consider that assignment of error first. Appellant contends the failure to notify the putative father of her children of the permanent custody proceedings, as required by R.C. 2151.414(A)[1], renders the trial court's judgment void.
The initial question before this court is whether appellant has the ability to raise claimed error involving an individual who is not a party to this appeal. Generally, appeals are permitted only to correct errors injuriously affecting the appellant. In re Hiatt (1993), 86 Ohio App.3d 716, 721 (Citations omitted.). Nevertheless, this court has previously held that an appellant can complain of error committed against a nonappealing party when the alleged error is prejudicial to the rights of that appellant. In re Smith (1991), 77 Ohio App.3d 1, 13; In reJohnson (Nov. 30, 1990), Lucas App. No. L-90-011, unreported.
In the present case, appellant presented no evidence to demonstrate that the failure to serve Michael B. prejudiced her ability to defend. In two cases from separate appellate dis tricts involving a failure to notify the putative father(s) of permanent custody proceedings, the courts held that the natural mothers of the children who failed to make such a showing lacked standing to raise the jurisdictional issue on appeal. See In reRackley (Apr. 8, 1998), Summit App. No. 18614, unreported; In reYoung (Feb. 5, 1996), Stark App. No. 95-CA-0180, unreported.
In another appellate case, however, where only the natural mother appealed, the court, sua sponte, determined that a permanent custody order was void ab initio because the juvenile court failed to provide notice of a permanent custody proceeding to the natural father whose address was known. In re Stackhouse
(Mar. 11, 1991), Athens App. No. 12456, unreported. Apparently, the Fourth Appellate District was of the opinion that a failure to serve notice on the natural father involved a lack of subject matter jurisdiction. We disagree.
The issue in this type of case is not whether the juvenile court has subject matter jurisdiction over permanent custody proceedings. R.C. 2151.23(A)(1) bestows that exclusive jurisdiction on the juvenile court. Instead, the issue in this case is whether appellant can challenge the validity of the entire judgment because the court lacked personal jurisdiction over a nonappealing party. While a valid personal judgment cannot be rendered in the absence of personal jurisdiction over a party,Mayhew v. Yova (1984), 11 Ohio St.3d 154, 156; NewarkOrthopedics, Inc. v. Brock (1994), 92 Ohio App.3d 117, 124; Rondyv. Rondy (1986), 13 Ohio App.3d 19, personal jurisdiction can be waived, Civ.R. 12(H). We are therefore of the opinion that only Michael B. can raise the validity of the judgment against him. Therefore, the judgment entered by the juvenile court as against appellant is not rendered void due to any alleged lack of service on the children's putative father. Further, we find, as did theRackley and Young courts, that appellant, in the absence of a showing of prejudice to her case, cannot raise the claimed lack of service on Michael B. as error on appeal.
Moreover, and assuming appellant could raise this issue, this court previously determined:
 "[W]here, despite the fact that a putative father has had notice of juvenile proceedings, no evidence appears in the record to show that the natural father has exerted his right as a parent and no formal objection is made prior to the entry of judgment on the dispositional [permanent custody] phase, the failure to provide adequate notice of the dispositional [permanent custody] hearing does not violate due process or equal protection." In re Jones (Mar. 31, 1992), Lucas App. No. L-91-204, unreported.
This court therefore concluded, in essence, that the judgment granting permanent custody of Jones' alleged child was not void for lack of proper service on the putative father.
As in Jones, Michael B. had notice of the dependency and neglect proceedings concerning Ciara, Michael, Emma and Deanna and stipulated to the finding of dependency and neglect. Michael B. never attempted to establish a substantial legal relationship with these children, and, in fact, certain doubts existed as to whether he was the father of some or all of these children. In addition, Michael B. had very little contact with the children and was incarcerated for at least part of the relevant period. Thus, we conclude that, under the particular facts and circumstances of this case, the failure to properly serve notice of the permanent custody hearing on Michael B. does not make the trial court's judgment on the permanent custody issue void.
Accordingly, appellant's third assignment of error is found not well-taken.
We shall set forth the law controlling the disposition of appellant's first and second assignments of error before discussing those assignments of error.
R.C. 2151.413(A), effective September 18, 1996, allows a public or private children services agency to file a motion for permanent custody of a child previously adjudicated abused, neglected and/or dependent and who was in the agency's temporary custody.
At a hearing on the motion, the agency must offer clear and convincing evidence to establish that one or more of the conditions listed in R.C. 2151.414(E) exists as to each of the child's parents. If, after considering all the relevant evi dence, the court determines that one or more of the conditions listed in R.C. 2151.414(E) exists, the court can and must enter a finding that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with his or her parents. Finally, under R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to that case. A nonexclusive list of factors relevant to the best interest of the child is found in R.C.2151.414(D)[2].
Only if these requisites are supported by clear and convincing evidence, can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996),75 Ohio St.3d 95. Clear and convincing evidence is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
In her first assignment of error, appellant essentially maintains that clear and convincing evidence was not offered at trial to support the existence of the condition enumerated in R.C.2151.414 (E)(1). In her second assignment of error, appel lant argues that appellee failed to make diligent efforts to assist her in remedying the problems that initially caused the children to be placed outside the home.
The record of this case indicates that appellee became involved with appellant and her children as early as 1991. Cases were opened for all of appellant's children in 1994. The chil dren were removed from appellant's home in January 1996, due to a lack of food in the home and appellant's failure to realize that two of her children needed medical attention. Long term conditions causing the children's removal were allegations of domestic violence, unstable and poor housing conditions, poor hygiene of the children, poor budgeting and a claimed substance abuse.
Services offered to appellant were referrals for substance abuse treatment, caseworker services to aid in obtaining food and stable housing, vouchers for Section Eight (public) housing, referrals to a G.E.D. program where appellant could obtain her high school equivalency degree and individual counseling.
Appellant's counselor, Barbara Baker, Ph.D., testified that she worked extensively with appellant on the issues of the neglect of the children, managing a household, parenting and appellant's problem with self-esteem and anger. After several months of working with appellant, Baker described her as a person who still lacked maturity when faced with responsibility. She stated that appellant put effort into gaining knowledge and insight, but failed to make any progress.
At the time of the trial of this matter, appellant, who allowed three housing vouchers to expire without using them, did not have stable housing and was not able to maintain steady employment. Further, Dr. Baker indicated that appellant still had no concept of the fact that money was a priority for housing and for the children. Instead, appellant would spend her money for things that were not necessary.
Although appellant's substance abuse counselor determined that appellant did not have a substance abuse problem, she described appellant as having immaturity and "manageability" problems. Appellant was working toward her G.E.D. during counseling, but, to the counselor's knowledge, never finished the course. Testimony showed that while appellant was fairly consistent in visiting her children, she had problems controlling them.
Based upon this review of the record, we find that clear and convincing evidence was offered to show that the condition in R.C. 2151.414(E)(1) existed and that the four minor children in this case could not be placed with their mother within a reasonable time or should not be placed with her. Further, the record reveals appellee made diligent efforts to help appellant remedy the conditions that caused the children's removal from the home. Thus, appellant's first and second assignments of error are found not well-taken.
The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal.
JUDGMENT AFFIRMED.
 Melvin L. Resnick, J.
 James R. Sherck, J.
 Richard W. Knepper, J.
CONCUR.
[1] R.C. 2151.414(A)(1) governs service for permanent custody proceedings and provides, in material part:
 "Upon the filing of a motion pursuant to section 2151.413 * * * of the Revised Code for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child, the court shall schedule a hearing and give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action and to the child's guardian ad litem. * * *."
R.C. 2151.29 further provides that notice of a permanent custody motion and hearing may be made personally or by certified mail. Service may also be effected by publication in the event that a person to be served cannot be located through reasonable efforts. R.C. 2151.29. See, also, Juv.R. 16.
[2] These factors are:
 "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may sig nificantly affect the child;
 "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
"(3) The custodial history of the child;
 "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency."