[Cite as *Gaul v. Gaul*, 2015-Ohio-3824.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**


| | | |
|---|---|---|
| WESLEY J. GAUL, JR., | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | CASE NO. 2013-A-0034 |
| DIANA J. GAUL, | : | |
| Defendant, | : | |
| (ANDREW W. SUHAR, CHAPTER 7 TRUSTEE FOR THE BANKRUPTCY ESTATE OF DIANA J. GAUL, | : | |
| | : | |
| | : | |
| Appellant.) | | |


Appeal from the Ashtabula County Court of Common Pleas, Case No. 2006 DR 425.

Judgment: Affirmed.


*James R. Skirbunt*, Skirbunt & Skirbunt Co., L.P.A., 3150 One Cleveland Center, 1375 East Ninth Street, Cleveland, OH 44114 (For Plaintiff-Appellee).

*Joseph R. Macejko*, Suhar & Macejko, LLC, 29 E. Front Street, P.O. Box 1497, Youngstown, OH 44501-1497 (For Appellant).


THOMAS R. WRIGHT, J.

{¶1} This appeal is from a final judgment in a divorce action before the Ashtabula County Court of Common Pleas. Appellant, Andrew W. Suhar, Trustee for the bankruptcy estate of Diana J. Gaul, challenges the denial of his Civ.R. 60(B) motion

to vacate the trial court's order granting a real property interest to appellee Wesley Gaul. For the following reasons, we affirm.

{¶2} Diana and appellee, Wesley J. Gaul, Jr., were married for twenty-nine years, and had three children. Wesley filed for divorce in 2006 and the parties were granted a divorce in January 2009. As part of the property division in the final divorce decree, the trial court ordered that the marital residence, located on South Spruce Street in Jefferson, Ohio, was to be sold as soon as possible, and that the net proceeds were to be split equally between them. The decree further ordered that, during the interim period prior to the sale, Diana could continue to reside in the home, and Wesley would be responsible for the monthly mortgage payment. However, payment of real estate taxes and homeowner's insurance were to be equally shared.

{¶3} Diana and Wesley also had interest in three other parcels. In the final decree, the trial court ordered Wesley to transfer his interests in all three parcels to Diana. One of these parcels was a vacant 14-acre tract located on Black Sea Road in Jefferson. This parcel contained a natural gas and oil well that the couple had leased to a third-party. Pursuant to the lease, the couple received royalties exceeding $8,000 per month prior to February 2007. Although Diana was to become sole owner of the Black Sea Road property under the divorce decree, Wesley retained a 50 percent interest in the mineral rights.

{¶4} As compensation for Wesley's interest in the Black Sea Road property, the trial court ordered Diana to pay him $9,000. In addition, she was ordered to reimburse him $9,688, to cover her share of the couple's 2006 tax liability. Both of

these amounts were to be deducted from Diana's share of the net proceeds stemming from the sale of the marital residence.

{¶5} Both Diana and Wesley appealed the final divorce decree. This court rejected the arguments of both sides and upheld the final decree in all respects. *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2009-A-0011, 2010-Ohio-2156.

{¶6} Almost immediately after the issuance of the final decree, problems developed regarding the sale of the marital residence. These problems delayed the sale for over two years. Although some of the delay was attributable to the poor housing market, many of the problems were caused by Diana. For example, in February 2009, Wesley moved to hold Diana in contempt for failing to cooperate with the realtor in listing the property. Furthermore, when Wesley began to have difficulties making the monthly mortgage payment, Diana refused to sign the re-financing agreement he negotiated with the lender. Consequently, the trial court ultimately granted Wesley sole authority to sell the marital residence.

{¶7} When Wesley was unable to pay the higher monthly mortgage payment, a foreclosure proceeding was instituted. However, before the marital residence was sold at Sheriff's sale, Wesley found a private buyer for the property. However, due to the nature of the sale, the proceeds were not sufficient to satisfy the existing mortgage. As a result, there were no residual funds that could be used to liquidate Diana's $9,000 debt to Wesley for the Black Sea Road property.

{¶8} Pursuant to the final divorce decree, Wesley was obligated to pay Diana $2,300 per month in spousal support. In March 2009, he moved the trial court to terminate this obligation on the grounds that Diana was cohabitating with another man.

3

Approximately two years later, the trial court granted the motion to terminate. Moreover, since Wesley had continued to make the monthly support payment while his motion was pending, the trial court found that he had overpayments totaling approximately $60,000. Thus, as of April 2011, Diana's total debt to Wesley, including the $9,000 for the Black Sea Road property, was over $75,000.

{¶9} As part of its April 2001 "cohabitation" judgment, the trial court rendered rulings concerning the disposition of the Black Sea Road property. Regarding Wesley, the court found him in contempt for failing to transfer his interest in that property to Diana, as required under the final divorce decree. As to Diana, the court found her in contempt for failing to pay him $9,000 for that parcel. In addition, she had not complied with the requirement that she obtain new financing for the property, so that Wesley would no longer be liable on the Black Sea Road property debt.

{¶10} Within three months of the release of the April 2011 judgment, Wesley executed a quit claim deed in favor of Diana as to the Black Sea Road property. However, even though the trial court gave Diana until August 2011 to purge her contempt, she did not obtain new financing for the property and did not pay Wesley the required sum for his interest. Furthermore, Diana did not make any other payments to satisfy her debt to him.

{¶11} In January 2012, Wesley moved the trial court for a temporary restraining order to enjoin Diana from transferring or encumbering the Black Sea Road property. In an affidavit accompanying the motion, Wesley averred that his trial counsel had recently been informed that the federal government levied a tax lien upon the property, and that Diana's monthly share of the natural gas and oil royalties would now be paid

4

to the government to reduce her income tax debt. Based upon this, he asserted that if Diana were allowed to sell her interest in the Black Sea Road property, he would have no other means by which to recoup the funds he was owed under the various court orders. One day after the submission of this motion, the trial court issued a judgment granting the temporary restraining order. No further proceedings were had on the matter, and the temporary order remained in effect indefinitely.

{¶12} Nine months later, on September 7, 2012, Wesley moved the trial court for an emergency ex parte order transferring title to the Black Sea Road property to him. As the basis for this motion, he asserted that Diana defaulted on the loan by failing to make the required monthly payments, and that foreclosure proceedings would soon be instituted. Wesley further asserted that unless he were granted title and allowed to make the necessary mortgage payments, Diana would lose control of the property, and there were no other remaining assets from which she could pay her debt to him. Finally, he argued that, since he was still liable on the Black Sea Road property mortgage, his own credit standing would be harmed if the foreclosure went forward.

{¶13} The same day the emergency motion was filed, the trial court rendered a judgment ordering transfer of title to the Black Sea Road property to Wesley. This judgment did not contain any language indicating that the transfer of title was temporary until the final merits of the motion could be considered; instead, the trial court's ruling on the transfer request was final. The judgment expressly ordered that, as a result of the transfer, Wesley was obligated to hold Diana harmless from any liability on the Black Sea Road mortgage. The judgment also stated that Diana had been purged of her prior contempt for failing to abide by prior court orders including her

5

failure to pay approximately $75,000. Last, in return for the transfer, that debt was deemed satisfied.

{¶14} No further proceedings were held in regard to the transfer of the Black Sea Road property to Wesley. Although Diana received notice of the emergency ex parte motion five days after the issuance of the trial court's judgment, she did not submit a response. Instead, in October 2012, she filed for Chapter 7 bankruptcy in federal court. At the outset of that separate proceeding, appellant Suhar was appointed trustee of Diana's bankruptcy estate.

{¶15} Approximately six months after the commencement of the bankruptcy action, the trustee filed a motion in the divorce proceeding to set aside, or be granted Civ.R. 60(B) relief from, the "transfer" judgment as to the Black Sea Road property. The trustee raised two arguments in support of this request. First, he argued that the disputed judgment was voidable because there was no recognized procedure under which an ex parte transfer of property could be made in a divorce action. Second, he contended that Diana was entitled to relief from the "transfer" judgment under Civ.R. 60(B)(4) and (B)(5) because her due process rights were violated when she was not afforded an opportunity to respond to Wesley's motion.

{¶16} In his written response to the trustee's motion, Wesley maintained that despite the fact that no hearing was held on his "transfer" motion, no violation of Diana's due process rights occurred because emergency circumstances existed which justified an ex parte order. Wesley further asserted that transfer of the Black Sea Road property could not be vacated under the bankruptcy laws because Diana did not

6

transfer the land voluntarily and received a substantial benefit from the transaction, i.e., satisfaction for the amount she owed Wesley.

{¶17} Without conducting a hearing on the matter, the trial court issued a judgment entry denying the trustee's motion to set aside the September 7, 2012 "transfer" order. Except for referencing Wesley's response to the motion, the trial court did not provide any grounds for its decision.

{¶18} The judgment denying the trustee's motion was rendered on May 21, 2013. Twenty-nine days later, the trustee filed a notice of appeal seeking to appeal both the September 7, 2012 ex parte transfer judgment and the May 21, 2013 judgment on his motion to set aside.

{¶19} Before this court, the trustee raises three assignments of error for review:

{¶20} "[1.] The trial court erred to the prejudice of appellant when it did not determine that plaintiff-appellee's ex parte motion on September 7, 2012 was voidable as it was granted in the absence of a prescribed rule or mode of proceeding.

{¶21} "[2.] The trial court erred to the prejudice of appellant when it granted the plaintiff-appellee's motion on September 7, 2012 divesting the defendant-appellant of her ownership interest in real estate without advance notice and a meaningful opportunity to be heard, all in violation of her basic due process rights.

{¶22} "[3.] The trial court erred to the prejudice of appellant when it overruled without a hearing the Trustee's alternative motion for relief pursuant to Civ.R. 60(B)."

{¶23} Under each of his first two assignments, the trustee sets forth arguments pertaining specifically to the merits of the September 7, 2012 judgment, in which the trial court ex parte ordered the transfer of ownership of the Black Sea Road property

7

from Diana to Wesley. Under his first assignment, he argues that the September 7, 2012 judgment is subject to reversal as "voidable" because there is no Ohio Revised Code provision or rule of civil procedure that grants a domestic relations court the power to order the transfer of real property on an emergency or ex parte basis. In making this argument, the trustee concedes that the trial court had subject matter jurisdiction over the case and personal jurisdiction over Diana when the disputed judgment was issued, but still contends that the judgment should be "set aside" through a post-judgment motion because the lack of any statute or rule allowing for such an order renders the judgment "irregular" and, therefore, voidable. Under his second assignment, he maintains that the trial court committed reversible error by issuing the September 7, 2012 judgment before affording Diana the elementary requirements of procedural due process, i.e., adequate notice of Wesley's motion to transfer and an opportunity to be heard.

{¶24} In raising the foregoing two arguments, the trustee is assuming that he is entitled to directly contest the substance of the September 7, 2012 judgment as part of this appeal. As noted above, the trustee did not file his notice of appeal until June 19, 2013, approximately twenty-nine days after the trial court issued its separate judgment overruling the trustee's motion to set aside or for 60(B) relief from the ex parte transfer judgment. App.R. 4(A) states that a notice of appeal must generally be filed within thirty days of the date of the trial court's judgment. Therefore, while there is no dispute that a timely appeal was taken from the trial court's May 21, 2013 judgment as to the trustee's "set aside/60(B)" motion, more than 250 days elapsed between the entry of the ex parte transfer order and the filing of the trustee's notice.

8

**{¶25}** Notwithstanding the foregoing timeline, the trustee still contends that his appeal of the September 7, 2012 judgment must be deemed timely because the federal bankruptcy code grants him additional time in which to complete legal acts on behalf of Diana Gaul. In support, he cites 11 U.S.C. 108, which governs extensions of time for bankruptcy trustees. The first two subsections of this statute provide:

**{¶26}** "(a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of –

**{¶27}** "(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

**{¶28}** "(2) two years after the order for relief.

**{¶29}** "(b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor * * * may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of –

**{¶30}** "(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

**{¶31}** "(2) 60 days after the order of relief."

**{¶32}** Noting that 11 U.S.C. 108(a) applies to the commencement of an action that the debtor would be entitled to bring, the trustee asserts that the filing of a notice of

9

appeal, for purposes of bringing an appeal, is akin to the commencement of an action. Based upon this, the trustee insists that he had two years from September 7, 2012 to institute a direct appeal of the ex parte transfer order.

{¶33} However, in interpreting 11 U.S.C. 108, federal courts have not applied subsection (a) in determining the maximum length of extension a trustee has to file a notice of appeal on behalf of the debtor. Instead, the courts have held that subsection (b) is applicable to a notice of appeal:

{¶34} "Section 108(b) applies generally to fixed periods within which a debtor or trustee 'may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act.' *In re Green*, 180 Bankr. 514, 520 (Bankr, C.D.Ill. 1995); *Autoskill Inc. v. Nat. Education Support Systems, Inc.*, 994 F.2d 1476, 1484 (10th Cir. 1993). Courts have held that '[section] 108(b)'s sweeping language includes the filing of a notice of appeal.' *In re Green*, 180 Bankr. at 520 (*citing Production Credit Ass'n of Minot v. Burk*, 427 N.W.2d 108, 110; *DiMaggio v. Blache*, 466 So.2d 489, 490-91 (La. Ct.App. 1985))." *Bell v. The Alden Owners, Inc.*, 199 B.R. 451, 460, 1996 U.S. Dist. LEXIS 10945 (S.D.N.Y.1996).

{¶35} In *Roberts v. Commissioner*, 175 F.3d 889, 898 (11th Cir.1999), the circuit court expressly concluded that, since the filing of a notice of appeal does not constitute the "commencement" of a new action, the two-year extension of 11 U.S.C. 108(a) does not apply to the bringing of a direct appeal. Instead, the time for filing an appeal is only extended by the sixty-day limit of subsection (b). *Id. See, also Hoang v. Hewitt Ave. Assoc., LLC*, 177 Md. App. 562, 936 A.2d 915, 922 (2007). Furthermore, although the federal bankruptcy code contains an "automatic stay" provision which prohibits the

10

commencement or continuation of a legal action against the debtor, *see* 11 U.S.C. 362, the provision does not toll the running of the sixty-day extension period under 11 U.S.C. 108(b). *Bell*, 199 B.R. at 461; *Prod. Credit Assn. of Minot v. Burk*, 427 N.W.2d 108, 110 (N.D.1988).

{¶36} In our case, there is no dispute that the trial court's ex parte transfer order was rendered on September 7, 2012. Prior to the completion of the thirty-day period for bringing a direct appeal from that judgment, Diana filed her bankruptcy petition on October 3, 2012. Thus, since Diana's right to appeal had not elapsed, the time in which she or the trustee could appeal the September 7, 2012 judgment was extended by sixty days under 11 U.S.C. 108(b). Given that the trustee did not file a notice of appeal with this court until June 2013, he failed to bring a timely appeal of the September 7, 2012 judgment. Consequently, the trustee can only challenge the substance of the trial court's May 21, 2013 judgment in this appeal.

{¶37} As a separate point regarding the first two assignments, as part of the trustee's legal discussion under the first assignment, he cites *Rondy v. Rondy*, 13 Ohio App.3d 19, 22 (9th Dist.1983), for the general proposition that a judgment of a trial court can be declared void if the court proceeded in a way contrary to due process. Yet, notwithstanding this cite, the trustee only argues under his first assignment that the September 7, 2012 transfer judgment is voidable. Moreover, although the trustee contends his second assignment that Diana was denied procedural due process in relation to the ex parte transfer order, he never maintains that the due process violation rendered the September 7, 2012 judgment void.

11

**{¶38}** The nature of the trustee's arguments at the trial level was identical. In addition to requesting Civ.R. 60(B) relief in his post-judgment motion, the trustee also moved to have the ex parte transfer order otherwise set aside. In the latter aspect of his motion, the trustee expressly raised the "due process" issue, but did not argue that the ex parte transfer order was void. Instead, he asserted that the September 7, 2012 judgment should be set aside because it was voidable due to the lack of any governing statute or procedural rule.

**{¶39}** "The distinction between 'void' and 'voidable' is crucial. If a judgment is deemed void, it is considered a legal nullity which can be attacked collaterally. Conversely, if a judgment is deemed voidable, it will have the effect of a proper legal order unless its propriety is successfully challenged through a direct appeal on the merits." *Clark v. Wilson*, 11th Dist. Trumbull No. 2000-T-0063, 2000 Ohio App. LEXIS 3400, *4-5 (July 28, 2000).

**{¶40}** In other words, if a judgment is merely voidable, the failure to file a timely direct appeal has the effect of rendering the judgment valid and enforceable between the parties. *Keat v. Leasor*, 6th Dist. Lucas No. L-06-1200, 2007-Ohio-1871, ¶14, quoting *Thomas v. Fick*, 9th Dist. Summit No. 19595, 2000 Ohio App. LEXIS 2368 (June 7, 2000). This principle applies even if the trial court committed a nonjurisdictional error in issuing the judgment. The sole exception to the principle is when a party can establish entitlement to relief from judgment under the limited circumstances delineated in Civ.R. 60(B). *Id.*; *State v. Smith*, 10th Dist. Franklin No. 06AP-1059, 2007-Ohio-2873, ¶15.

12

**{¶41}** As part of his argumentation at the trial level, the trustee admitted that the trial court had subject matter jurisdiction over the underlying divorce case and personal jurisdiction over Diana Gaul as of the date of the issuance of the ex parte transfer judgment. Hence, the trustee conceded the two primary grounds upon which a judgment can be found void. Although there may not be unanimous support for the proposition among the Ohio appellate districts, *see, e.g., The Carter-Jones Lumber Co. v. Willard*, 6th Dist. Lucas No. L-06-1096, 2006-Ohio-6629, ¶10, some courts have held that a trial court judgment can also be declared void when a party has been denied minimal due process. *Rondy*, *supra*; *Kingery's Black Run Ranch, Inc. v. Kellough*, 4th Dist. Ross No. 00CA2549, 2001 Ohio App. LEXIS 6072, *9-10 (Dec. 18, 2001). However, while the trustee has stated at both the trial and appellate levels that the trial court violated Diana's due process rights in issuing the ex parte transfer judgment, he has never contended that the violation had the effect of rendering the judgment void.

**{¶42}** Given that the trustee has only argued that the ex parte transfer judgment is voidable, there was no viable basis for him to maintain that the judgment must be set aside. Instead, since neither the trustee nor Diana filed a timely direct appeal from that judgment, his sole remedy was a Civ.R. 60(B) motion for relief from judgment. Therefore, because the arguments in the trustee's first two assignments would only be properly before this court in a direct appeal from the September 7, 2012 judgment or if he were contending that the judgment is void, their final merits cannot be addressed. For this reason, the first two assignments are overruled.

**{¶43}** Since the trustee's third assignment pertains to the trial court's decision to deny his request for Civ.R. 60(B) relief, its merits can be fully addressed. Essentially,

13

he asserts that the trial court abused its discretion in issuing a final ruling on the motion without conducting an evidentiary hearing. According to the trustee, such a hearing was warranted because his motion contained sufficient assertions to establish that he would likely be able to satisfy the three requirements for 60(B) relief.

{¶44} Civ.R. 60(B) sets forth a mechanism by which a trial court can give a party equitable relief from a final judgment when the interests of justice so dictates. *Gaul v. Gaul*, 11th Dist. Ashtabula No. 2011-A-0065, 2012-Ohio-4005, ¶18. The rule "'attempts to strike a balance between protecting the finality of judgments and the unjust operation of a voidable judgment.'" *Id.*, quoting *Brewster v. Fox*, 11th Dist. Lake No. 2003-L-010, 2004-Ohio-1145, ¶6.

{¶45} Given the equitable nature of Civ.R. 60(B) relief, the decision to grant or deny such relief lies within a trial court's sound discretion; accordingly, the decision will be upheld on appeal unless an abuse of discretion is demonstrated. *Tochtenhagen v. Tochtenhagen*, 11th Dist. Trumbull No. 2013-T-0039, 2014-Ohio-5380, ¶14. "Under a 60(B) analysis, an abuse of discretion occurs when the trial court exhibits an attitude that is unreasonable, arbitrary or unconscionable." *Natl. City Bank v. Graham*, 11th Dist. Lake No. 2010-L-047, 2011-Ohio-2584, ¶15. Stated differently, a 60(B) ruling will only be reversed when the trial court's analysis "'does not comport with reason, nor the record.'" *Tochtenhagen*, at ¶14, quoting *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30.

{¶46} To succeed on a Civ.R. 60(B) motion, the moving party must satisfy three requirements: (1) he must show that he will be able to present a meritorious defense or claim if relief is actually granted; (2) he must show that he is entitled to relief under one

14

of the five permissible reasons listed in the rule; and (3) he must show that the motion was filed within a reasonable time. *Gaul*, 2012-Ohio-4005, at ¶19. If the moving party fails to satisfy one of the three requirements, relief from judgment must be denied. *Id.*

{¶47} In this case, the scope of our review is limited to the second requirement for 60(B) relief, as the record shows that the trustee's motion did not set forth sufficient factual allegations establishing that he or Diana are entitled to relief from the sua sponte transfer judgment under one of the five grounds stated in the rule. In his Civ.R. 60(B) motion, the trustee presented three arguments regarding the second requirement. First, he maintained that relief should be granted under 60(B)(4) because the trial court acted "irregularly" in sua sponte ordering the transfer of the real property when there is no statute or civil rule sanctioning this type of procedure. Second, the trustee contended that relief should be awarded under 60(B)(5) because Diana's due process rights were violated. Third, he asserted that relief should be awarded under 60(B)(5) because provisions of the federal bankruptcy code mandated that the transfer of the property be rescinded.

{¶48} The trustee's first two arguments challenge the propriety of the procedure the trial court followed in issuing the sua sponte transfer judgment. Since both of these arguments are based solely upon the trial record, i.e., no extrinsic evidence is needed to demonstrate the alleged errors, they could have been raised in a direct appeal from the September 7, 2012 transfer judgment. Under Ohio law, a Civ.R. 60(B) motion cannot be employed as a substitute for a direct appeal: "This court has stated that '(an appellant) cannot, however, after the opportunity for direct appellate review has passed, use Civ.R. 60(B) as a means of indirect entry into appellate review.'"

15

*JPMorgan Chase Bank v. Rhodes*, 11th Dist. Lake No. 2013-L-117, 2014-Ohio-2706, ¶18, quoting *Am. Express Bank, FSB v. Waller*, 11th Dist. Lake No. 2011-L-047, 2012-Ohio-3117, ¶14. Given Diana received notice of the September 7, 2012 transfer judgment five days after its issuance, she could have raised her challenges to the trial court's procedure in a timely appeal. As a result, she is foreclosed from asserting the two arguments as grounds for the trustee's 60(B) motion.

{¶49} Under his third argument regarding the second requirement for 60(B) relief, the trustee asserted that relief was justified under 60(B)(5) because the transfer of the Black Sea Road property was impermissible under the federal bankruptcy code. Citing 11 U.S.C. 547(b), the trustee submitted that he had the authority to "avoid" the court-ordered transfer because it occurred within ninety days prior to the filing of Diana's bankruptcy petition. Although not expressly stated in the 60(B) motion, it is the trustee's position that, regardless of the merits of Wesley's motion to transfer ownership of the Black Sea Road property at the time it was filed, the court-ordered transfer had to be rescinded once Diana filed for bankruptcy.

{¶50} As relevant to the facts of this case, 11 U.S.C. 547 provides, in pertinent part:

{¶51} "(b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property –

{¶52} "(1) to or for the benefit of a creditor;

{¶53} "(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

{¶54} "(3) made while the debtor was insolvent;

16

{¶55} "(4) made –

{¶56} "(A) on or within 90 days before the date of the filing of the petition; or

{¶57} "(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

{¶58} "(5) that enables such creditor to receive more than such creditor would receive if –

{¶59} "(A) the case were a case under chapter 7 of this title [11 U.S.C. 701 et seq.];

{¶60} "(B) the transfer had not been made; and

{¶61} "(C) such creditor received payment of such debt to the extent provided by the provisions of this title [11 U.S.C. 101 et seq.]."

{¶62} The basic purpose of the foregoing provision is "to discourage any activity by a debtor or creditor prior to bankruptcy which might deplete the debtor's assets and to provide an equitable pro rata distribution among all creditors of the debtor." *In re Cockreham*, 84 B.R. 757, 761, 1988 U.S. Dist. LEXIS 2789 (D.C.Wyo.1988). 11 U.S.C. 547(b) sets forth five separate criteria, each of which must be met before a transfer of property can be avoided as a preferential transfer. *Id.* The burden of establishing these criteria is upon the trustee by a preponderance of the evidence. *In re Prescott*, 805 F.2d 719, 726 (7th Cir.1986); *In re Aspen Data Graphics, Inc.*, 109 B.R. 677, 681, 1990 Bankr. LEXIS 27 (Bankr. E.D.PA.1990).

{¶63} In raising the application of 11 U.S.C 547(b) as a basis for granting relief from the sua sponte transfer judgment under the catchall provision of 60(B)(5), the trustee did not cite any precedent establishing that a state trial court has the authority

17

to determine whether the five criteria to "avoid" a transfer have been met. However, even if a state court can apply the federal statute, the trustee did not allege sufficient facts to establish that all five criteria could be met.

{¶64} Specifically, the trustee's Civ.R. 60(B) motion only contained sufficient assertions to satisfy the first, second, and fourth criteria under 11 U.S.C 547(b). As to the remaining two criteria, the motion did not allege that Diana was insolvent when the court-ordered transfer was issued on September 7, 2012, or that Wesley would receive less funds through the bankruptcy proceeding than the value of the Black Sea Road property. In regard to the latter point, another section of the trustee's motion contained a general statement that if the Black Sea Road parcel was sold as part of the bankruptcy proceedings, the proceeds could have been used to the "benefit" of both Diana and Wesley in dealing with certain tax problems. However, no specific financial accounting was provided, and the trustee never expressly asserted that Wesley received a greater benefit through the trial court's ex parte judgment.

{¶65} In raising the issue of whether the court-ordered transfer must be avoided under 11 U.S.C. 547(b), the trustee's 60(B) motion only made a fleeting reference to the statute and his authority under it. The motion not only failed to cite the five criteria for avoiding a transfer under the federal provision, but also failed to allege any operative facts that would be sufficient to meet the third and fifth criteria. Accordingly, the trustee's "bankruptcy code" argument failed to state a viable reason for entitlement to relief under Civ.R. 60(B)(5).

{¶66} As noted above, a party must satisfy all three requirements for Civ.R 60(B) relief before his motion can be granted. *Gaul*, 2012-Ohio-4005, at ¶19. Given that the

18

trustee failed to present any argument establishing that he or Diana were entitled to relief under one of the five possible grounds stated in the rule, his 60(B) motion could have been denied on that basis alone.  Moreover, in light of these deficiencies, the trial court had no obligation to conduct an evidentiary hearing on the motion prior to issuing its decision.

{¶67}  As the trial court did not abuse its discretion in denying the trustee's Civ.R. 60(B) motion for relief from the September 7, 2012 judgment, his third assignment also is without merit.

{¶68}  Pursuant to the foregoing analysis, it is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas is affirmed.


COLLEEN MARY O'TOOLE, J., concurs,

DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.


_____


DIANE V. GRENDELL, J., concurs in judgment only with a Concurring Opinion.

{¶69}  I concur in the judgment of the court.  I write separately because I take exception to the majority's statement that the trustee "has only argued that the ex parte transfer judgment is voidable," and "has never contended that the violation had the effect of rendering the judgment void."  *Supra* at ¶ 42 and 41.

{¶70}  Although the trustee referred to the ex parte entry in the caption of his motion to set aside "as voidable," his substantive argument was that the judgment was

19

void. The trustee noted that, while "a judgment is generally void only when the court rendering the judgment lacks subject-matter jurisdiction or jurisdiction over the parties," a judgment is void "also where the court acts in a manner contrary to due process." The trustee then proceeded to argue that the Black Sea Road property was transferred "in a manner contrary to the due process rights of the Defendant."[1]

**{¶71}** Albeit vaguely, the trustee did expressly argue in the court below that the ex parte entry was void. Accordingly, this court should address the merits of that argument.

**{¶72}** The trustee relied on the case of *Rondy v. Rondy*, 13 Ohio App.3d 19, 468 N.E.2d 81 (9th Dist.1983), for the proposition that "[a] judgment can be void not only for lack of jurisdiction, but also "where the court acts in a manner contrary to due process." *Id.* at 22.

**{¶73}** The *Rondy* case is not controlling on this court and, in fact, is contrary to the position taken by this and other courts. *Hiener v. Moretti*, 11th Dist. Ashtabula No. 2009-A-0001, 2009-Ohio-5060, ¶ 16 ("where a defendant makes an appearance in an action, but does not receive the requisite notice under Civ.R. 55(A), the award of default judgment is voidable and subject to being vacated under a Civ.R. 60(B) analysis"); *Aurora Loan Servs., LLC v. Cart*, 11th Dist. Ashtabula No. 2010-A-0024, 2011-Ohio-2450, ¶ 23; *Deutsche Bank Natl. Trust Co. v. Lagowski*, 7th Dist. Belmont No. 10 BE 28, 2012-Ohio-1684, ¶ 53 ("typical due process violations, other than a lack of personal jurisdiction, are voidable but not void") (citation omitted).

---

1. The trustee further noted that a void judgment may be set aside without satisfying the requirements of Civil Rule 60(B). For this reason, the motion was captioned as a motion "to set aside * * * or, ***in the alternative***, motion for relief from judgment pursuant to Ohio Civ.R. 60(B)(4) and (5)" (emphasis added).

20

{¶74} Moreover, the *Rondy* decision has been distinguished on the issue of whether a due process violation renders a judgment void: "the due process at issue [in *Rondy*] is only that process implicating jurisdictional issues." *Kest v. Leasor*, 6th Dist. Lucas No. L-06-1200, 2007-Ohio-1871, ¶ 15. Here, the due process violation implicated the issue of notice, not the issue of the lower court's jurisdiction.

{¶75} Although properly raised, the argument that the ex parte entry was void lacks merit. The trustee's reliance on Civil Rule 60(B) for relief from the ex parte entry is unavailing for the reasons set forth in the majority's opinion. *Supra* at ¶ 43-67.